FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 08, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CEDRIC S.,[1]

          Plaintiff,

     v.

MARTIN O'MALLEY, Commissioner of
Social Security,

          Defendant.

No.    2:23-cv-00325-EFS

**ORDER PARTIALLY REVERSING
THE ALJ'S DENIAL OF BENEFITS,
AND REMANDING FOR FURTHER
PROCEEDINGS**

       Due to degenerative disc disease of the lumbar spine, hypertension, a
ruptured biceps tendon, diabetes, corneal scar, obesity, uveitis, and gastroenteritis,
Plaintiff Cedric S. alleges that he is unable to work fulltime and applied for
disability insurance benefits and supplemental security income benefits. He
appeals the denial of benefits by the Administrative Law Judge (ALJ) on the
grounds that the ALJ improperly assessed Plaintiff's credibility and improperly

_____

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as
"Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

analyzed the medical opinions of record. As is explained below, the ALJ erred in evaluating Plaintiff's subjective complaints and failed to differentiate between Plaintiff's symptoms before and after his fusion surgery in May 2021. Based on this error, the ALJ failed to credit the supported testimony of Plaintiff for the period from, minimally, April 2020 through May 2021. Therefore, this matter is remanded for the ALJ to determine the disability period.

## I.    Background

In February 2021, Plaintiff filed an application for benefits under Title 2 and an application for benefits under Title 16, claiming disability beginning April 28, 2020, based on the physical  impairments noted above.[2]

After the agency denied Plaintiff benefits, ALJ Marie Palachuk held a telephone hearing in March 2023 at which Plaintiff appeared with his representative.[3] Plaintiff and a vocational expert testified.[4] After the hearing, the ALJ issued a decision denying benefits.[5] The ALJ found Plaintiff's alleged

---

[2] AR 204, 225.

[3] AR 35-56.

[4] *Id.*

[5] AR 14-34.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g), a five-step evaluation determines whether a claimant is disabled.

symptoms were not entirely consistent with the medical evidence and the other evidence.[6] As to medical opinions: the ALJ found:

- The opinions of treating source Tyson Andelin, PA-C, to be not persuasive.

- The opinions of DSHS consultant Myrna Palasi, MD, to be unpersuasive.

- The opinions of state agency evaluator Lisa Hacker, PhD, to be persuasive.

- The opinions of state agency evaluators Merry Alto, MD, and Robert Stuart, MD, to be persuasive.[7]

The ALJ also considered the third-party statement of Megan Rolly but did not rate its persuasiveness.[8] As to the sequential disability analysis, the ALJ found:

- Plaintiff meets the insured status requirements through March 31, 2026.

- Step one: Plaintiff had not engaged in substantial gainful activity since April 28, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairment: degenerative disc disease of the lumbar spine with fusion

---

[6] AR 22-24.

[7] AR 24-25.

[8] AR 25-26.

in May 2021.  The ALJ also found that obesity, hypertension, ruptured biceps tendon, diabetes, corneal scar, uveitis, gastroenteritis, and abscess were non-severe.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC:  Plaintiff had the RFC to perform a full range of light work with the following exceptions:

   [Plaintiff] can occasionally perform all postural activities (climbing, balancing, stooping, kneeling, crouching and crawling); he can occasionally reach with the right (dominant) upper extremity; he must avoid concentrated exposure to unprotected height and moving/dangerous machinery.

- Step four: Plaintiff is unable to perform past relevant work of an industrial truck operator, store laborer, and sales clerk.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as an assembly machine tender (DOT 754.685-014), usher (DOT 344.677-014), and counter clerk (DOT 249.366-010).[9]

---

[9] AR 19-27.

1     Plaintiff timely requested review of the ALJ's decision by the Appeals

2  Council and now this Court.[10]

3              ## II.    Standard of Review

4     The ALJ's decision is reversed "only if it is not supported by substantial

5  evidence or is based on legal error,"[11] and such error impacted the nondisability

6  determination.[12] Substantial evidence is "more than a mere scintilla but less than a

7  preponderance; it is such relevant evidence as a reasonable mind might accept as

8  adequate to support a conclusion."[13]

9

10

11  [10] AR 198.

12  [11] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §§ 405(g),

13  1383(g).

14  [12] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

15  *grounds by* 20 C.F.R. §§ 404.1520(a), 416.920(a) (recognizing that the court may

16  not reverse an ALJ decision due to a harmless error—one that "is inconsequential

17  to the ultimate nondisability determination").

18  [13] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

19  1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

20  court "must consider the entire record as a whole, weighing both the evidence that

21  supports and the evidence that detracts from the Commissioner's conclusion," not

22  simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### III.    Analysis

Plaintiff argues the ALJ failed to properly consider the longitudinal record when assessing the medical opinions and Plaintiff's symptom testimony, and that this resulted in an error at step five. The Commissioner argues that the ALJ's factual findings, which deserve deference, are supported by substantial evidence. As is explained below, the ALJ's rejection of Plaintiff's symptom testimony and the medical opinions, for at least a fourteen-month period, is not supported by substantial evidence.

### A.    Symptom Reports: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to provide valid reasons for discounting his symptom reports regarding his back pain. The ALJ offered several reasons for discounting Plaintiff's symptom reports—each reason is addressed below.

### 1.    Standard

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[14] This requires the ALJ to "show his work" and

_____

143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[14] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Factors to be considered by the ALJ when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration,

provide a "rationale . . . clear enough that it has the power to convince" the

reviewing court.[15]

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged."[16] Second, "[i]f the claimant meets the first test and there

is no evidence of malingering, the ALJ can only reject the claimant's testimony

about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing

reasons' for the rejection."[17] General findings are insufficient; rather, the ALJ must

---

frequency, and intensity of pain or other symptoms; 3) factors that precipitate and

aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any

medication the claimant takes or has taken to alleviate pain or other symptoms; 5)

treatment, other than medication, the claimant receives or has received for relief of

pain or other symptoms; 6) any non-treatment measures the claimant uses or has

used to relieve pain or other symptoms; and 7) any other factors concerning the

claimant's functional limitations and restrictions due to pain or other symptoms.

Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c);

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

[15] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (alteration added).

[16] *Molina*, 674 F.3d at 1112.

[17] *Ghanim* 763 F.3d at 1163(quoting *Lingenfelter*, 504 F.3d at 1036).

identify what symptom claims are being discounted and what evidence undermines these claims.[18] "The clear and convincing standard is the most demanding required in Social Security cases."[19] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[20]

    2.   <u>Plaintiff's Testimony</u>

    On March 2, 2023, Plaintiff appeared with her attorney for a hearing before ALJ Marie Palachuk.[21] Plaintiff testified and vocational expert Susan Foster testified.[22] Plaintiff testified that he graduated from high school in the mid 1990's

---

[18] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[19] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[20] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[21] AR 35-56.

[22] *Id.*

1    and that he has had many injuries in his lifetime but always returned to work.[23]

2    Plaintiff testified that he injured his back in April 2020, and that the majority of

3    his pain is in his lower back and travels down his leg on the right side.[24] It took a

4    year for surgery because he was sent back to work but later needed a fusion and he

5    needed to get MRI's to show his injury.[25] He said he lies down for four hours a day

6    to relieve pain.[26]

7        Plaintiff testified that after the surgery he is still in pain but can be on his

8    feet for up to two hours.[27] He said that he can sit for two hours but would also need

9    to lift his legs. He said that he was terminated from pain medication because he

10   had a one-time usage of cocaine.[28] He said that he was off narcotic medication for

11   two months and needed to lie down more.  He was not prescribed a walker but he

12   used one until it became more painful to bend over it.[29] He needs help with

13   dressing and bathing and cannot bend because of the fusion in his back.[30]

14

15   ───────────────

16   [23] AR 39-40.

17   [24] AR 40.

18   [25] *Id.*

19   [26] AR 41.

20   [27] *Id.*

21   [28] AR 42.

22   [29] AR 43.

23   [30] *Id.*

He said that in March 2022, he tried to go back to work as a forklift operator but he could only last a few months because he had to pull himself up with his arms.[31] He was still in pain and had had the surgery in the summer of 2021.[32] He was not allowed anymore physical therapy and was still taking medication. He injured his arm in July 2022, and cannot write or type for more than 15 to 20 minutes without stopping and having to rest for 30 minutes.[33] He has to rest his arm for 3 to 4 hours a day.[34] He can do things like grasping and washing dishes for 15 to 20 minutes as well.[35] He can only lift 5 to 10 pounds with this right hand and can lift more with his left but it hurts his back.[36] He said that his medication makes him drowsy and he has trouble concentrating.[37] Plaintiff stated that he completed high school and a little college.[38]

---

[31] AR 44.

[32] *Id.*

[33] AR 45.

[34] *Id.*

[35] AR 46.

[36] *Id.*

[37] *Id.*

[38] *Id.*

Plaintiff said that he is 5'6" and weighs 190 pounds.[39] He said that he has bad days where his pain will keep him up at night and that he has difficulty with urination where he will wet himself.[40] About three to four days a month he will have a bad day and not get out of bed.[41] Plaintiff said that at Harbor Freight he worked in the warehouse area stocking and in the store area doing sales.[42] He worked for McDonald's part-time.[43] He worked for LSC Communications and at Donnelly and Sons he drove a forklift. He drove a hoist truck and would get bins of things and put them in the truck.[44] He also worked as a parts delivery person for a car dealer.[45]

### 3.    The ALJ's Findings

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his "medically determinable impairments" were only partially inconsistent with the objective medical evidence, that the record indicates that Plaintiff's condition improved with treatment, that Plaintiff was noncompliant

---

[39] AR 47.

[40] *Id.*

[41] *Id.*

[42] AR 48.

[43] *Id.*

[44] AR 48-49.

[45] AR 49.

with treatment, and that Plaintiff's allegations were inconsistent with his daily activity. [46]

4.   Relevant Medical Records

On May 7, 2019, Plaintiff presented to William Wagner, MD, with complaints of lower back and right leg problems.[47] Plaintiff reported having had an L4-5 discectomy and stated his symptoms initially improved but then got worse.[48] On examination range of motion of the back was diminished, there was tenderness to palpation over the right lower spine, tenderness to palpation in the right SI joint, and mild tenderness in the gluteal area, muscle strength was normal and gait was symmetric and steady.[49] Dr. Wagner assessed disc protrusion/extrusion at L4-5 greater on right and contributing to L5 nerve root irritation.

On December 30, 2019, Plaintiff presented to PA Andelin, reporting that three days prior at work he had lifted items and felt a "pop" in his back but had minimal symptoms at the time.[50] Over the next three days, he had increasing pain and muscle spasming.[51] He was assessed with sprain of the ligaments of the

---

[46] AR 22-24.

[47] AR 641.

[48] Id.

[49] AR 643-644.

[50] AR 893.

[51] Id.

lumbar spine.[52] He was prescribed cyclobenzaprine and told to return in a week for follow up.[53]

On February 11, 2020, Plaintiff presented to PA Andelin, reporting that his back pain had not resolved and had increased since his last visit on December 30, 2019.[54] Plaintiff reported that his employer had told him he would be in trouble if he returned for his scheduled January 6, 2020 appointment.[55] On examination, Plaintiff had localized moderately severe muscle spasms of the left lateral lower lumbar and left lateral mid thoracic back region.[56] Plaintiff complained of pain in his left lower back radiating into his legs.[57] He had normal muscle tone and bulk, intact nerves and antalgic gait, favoring the left hip and leg.[58]

On February 14, 2020, Plaintiff presented to Glenn Saxby, MD.[59]  He reported that he had back pain for a month following a work injury that radiated

---

[52] AR 894.

[53] *Id.*

[54] AR 889.

[55] *Id.*

[56] AR 891.

[57] *Id.*

[58] *Id.*

[59] AR 469.

into the leg causing pain and numbness, but did not have weakness.[60]  He also reported that he had increased urinary frequency but no incontinence.[61] On examination, he had tenderness to the left SI joint, midline lumbar tenderness, and positive straight leg raising.[62] On February 23, 2020, Plaintiff presented to John Jamison, ARNP, with spams of the muscles in his low back and sprained ligaments in his low back.[63] He was diagnosed with lumbago with sciatica, muscles weakness and other abnormalities of gait due to weakness, pain, and joint stiffness.[64] ARNP Jamison noted major loss of flexion with pain, major loss of extension with pain, and moderate to minimal loss of side gliding.[65]  He had an antalgic gait with pain during weightbearing.[66]

A physical therapy note by Ryan Carpenter, PT, dated March 9, 2020, indicates that Plaintiff was admitted for muscle spasms in the low back.[67] Plaintiff was slow to move and reported that he had not been able to do his physical therapy

---

[60] AR 469.

[61] *Id.*

[62] AR 470.

[63] AR 464.

[64] *Id.*

[65] AR 466.

[66] *Id.*

[67] AR 463.

exercises because after work he needed to go to bed.[68] PT Carpenter noted that Plaintiff's function had improved with physical therapy but seemed to have plateaued.[69]

On April 6, 2020, Plaintiff presented to PA Andelin with worsening back pain.[70] He reported that he could not bend over to put on his shoes by himself and needed help and could not sleep at night due to pain which was now a level of 10/10.[71] On examination, there was moderate to severe tenderness to palpation of the lumbar spine, and Plaintiff was unable to perform slump test or straight leg raising.[72] Plaintiff was assessed with lumbago with sciatica, left side; spasm of back muscles; and sprain of ligaments of lumbar spine.[73]

On April 20, 2020, Plaintiff was referred by Tyson Andelin, PA-C, to Moses Lake Sports Physical Therapy with a diagnosis of spasm of back muscles; sprain of ligaments of lumbar spine, subsequent encounter; back pain; and lumbago with sciatica, left side.[74]  He ordered physical therapy for 3 months due to back pain and

---

[68] *Id.*

[69] AR 464.

[70] AR 870.

[71] *Id.*

[72] AR 872.

[73] *Id.*

[74] AR 446.

left leg pain.[75] On April 21, 2020, Plaintiff presented to PT Joshua Bruce, reporting significant back pain with radiating pain in both legs, limited activity tolerance and difficulty finding a comfortable position.[76]  Past history included chronic pain and disc herniation surgery in 2014 at the L5 level.[77]  On examination, Plaintiff had difficulty rising from a chair and walking, tenderness across the low back, and limited range of motion with side bending, rotation and forward being most difficult.[78] Straight leg raising was positive on the right and the core muscles and hip muscles were diminished.[79] At an April 23, 2020 appointment, PA Bruce noted similar findings and modified his program but stated that if his pain did not subside they might have to discontinue therapy until an MRI could be done.[80]

On April 27, 2020, Plaintiff presented to Jodi O'Shea, PA-C, with back pain.[81] Plaintiff reported back pain with leg weakness that had been increasing since he lifted something at work in December 2019 and felt a "pop" in his back.[82]

---

[75] *Id.*

[76] AR 447.

[77] *Id.*

[78] *Id.*

[79] AR 449.

[80] AR 451.

[81] AR 861.

[82] *Id.*

On physical examination he had significant muscle tightening over the paraspinals, deep tendon reflexes decreased on the patella, decreased muscle strength in the lower left extremity and positive straight leg raising on the left.[83] She diagnosed him with left sciatica, left leg weakness and urinary incontinence.[84]

On May 6, 2020, Plaintiff had an MRI of the lumbar spine without contrast, due to lower back pain with bilateral leg radiculopathy.[85] It indicated moderate bilateral foraminal stenosis at L5-S1 due to ligamentous and facet hypertrophy.[86] At L4-5, it indicated moderate degenerative disc changes; disc extrusion which narrowed the lateral recesses and possibly caused bilateral nerve root impingement; and moderate to prominent foraminal stenosis on the left side and right side due to disc bulge and ligamentous and facet hypertrophy.[87] At the L3-4 level and L2-3 level, it indicated moderate bilateral foraminal stenosis present due to ligamentous and facet hypertrophy.[88]

---

[83] *Id.*

[84] *Id.*

[85] AR 462.

[86] *Id.*

[87] *Id.*

[88] *Id.*

On May 29, 2020, Plaintiff presented to James Campbell, DO, for evaluation of back pain and lower extremity pain.[89]  Plaintiff reported a history of a discectomy at L5, with reinjury of his back in December 2019 at work.[90] Since the injury, pain had progressed and he had low back pain with radiating pain into his legs and numbness in his feet.[91] Multiple therapies such as physical therapy, injections and narcotic medication and gabapentin were unsuccessful.[92] On examination muscle strength was normal, sensation was intact, deep tendon reflexes were 2/4 and Hoffman's test was negative but there was an antalgic gait and limited range of motion of the lumbar spine.[93]  Dr. Cambell stated:  "There is severe degenerative disc disease at L4-5 with severe Modic endplate change as well as severe STIR signal change indicating inflammatory process from degenerative disc. There is also disc bulge with severe bilateral lateral recess stenosis and impingement around the L5 nerve roots. AP lateral flexion-extension x-rays of the lumbar spine obtained today were reviewed. There is degenerative disease that is severe in nature as described above at the right L4-5."[94] Dr. Campbell assessed

---

[89] AR 636.

[90] *Id.*

[91] *Id.*

[92] AR 637.

[93] AR 639-640.

[94] AR 640.

Plaintiff with severe degenerative disc disease L4-5, previous laminectomy and severe lateral recess stenosis with radiculopathy into the lower extremities and opined that he required fusion surgery as well as decompressive surgery to decompress the nerve roots.[95]

On June 17, 2020, Plaintiff presented to PA Andelin and reported pain and urinary incontinence.[96]  Marijuana helped his pain, but he had run out of over-the-counter drugs.[97]

On July 10, 2020, Plaintiff presented to Beatriz Garcia-Osorio, MA-C, and PA Andelin for follow-up.[98] Plaintiff reported that a month prior a neurosurgeon had recommended surgery and Plaintiff wanted a second opinion.[99] Plaintiff had been prescribed narcotics but did not take them, and still had pain radiating into his legs.[100] He was assessed with degenerative disc disease, lumbar spine; lumbar spondylosis; bilateral stenosis of lateral recess of the lumbar spine; urge

---

[95] *Id.*

[96] AR 589.

[97] *Id.*

[98] AR 495.

[99] *Id.*

[100] *Id.*

incontinence; back pain; hypertension; lumbago with sciatica, left side; and he was advised of the benefits of short term narcotic medication for pain.[101]

On July 11, 2020, Plaintiff presented to Robert Deichert, MD.[102] His condition was stable and he was released after treatment with pain medication.[103] He reported that his low back pain had increased in the last month and he has pain radiating into his legs after an injury 6-12 months prior.[104] After reviewing an MRI of May 6, 2020, Dr. Deichert diagnosed lumbar pain due to central disc extrusion.[105] On July 25, 2020, Plaintiff again presented to Dr. Deichert with back pain.[106] Plaintiff was treated with pain medication and muscles relaxers for muscle spasm and pain and was discharged.[107] On examination, he was in mild distress and had low lumbar diffuse tenderness.[108]

---

[101] AR 497-498.

[102] AR 456-57.

[103] *Id.*

[104] AR 458.

[105] AR 459.

[106] AR 454.

[107] AR 455.

[108] AR 455-56.

On July 22, 2020, Plaintiff presented to PA Andelin for follow-up and reported pain getting up and getting out of shower, difficulty bending over to put on shoes and limited mobility, even after taking narcotic pain medication.[109] Plaintiff was wearing slip on sandals and his mobility was greatly limited although he did not limp.[110]  Lab results from a sample taken August 12, 2020, indicated that Plaintiff was positive for marijuana and his prescribed medications.[111]  At a follow-up appointment on August 26, 2020, Plaintiff reported difficulty getting into his car and bending despite taking Percocet.[112] On September 21, 2020, Plaintiff presented to PA Andelin with increased nerve pain in both legs, causing numbness and swelling in the right upper thigh.[113] He reported that the pain is ten times worse when his Percocet wears off and that he had taken a few more than prescribed at night when the pain was worse and that he felt he needed a higher dose of Percocet.[114] PA Andelin increased Plaintiff's dosage of Percocet but advised that after Plaintiff's surgery the dosage would be tapered.[115]

---

[109] AR 499.

[110] AR 499, 501.

[111] AR 506.

[112] AR 518.

[113] AR 523.

[114] *Id.*

[115] AR 526.

On October 2, 2020, Plaintiff presented to PA Andelin for follow-up after being examined by specialists.[116] On examination, he had an antalgic gait, he had reproducible lumbar back pain in the paraspinal region without spasm; normal hip and knee strength; straight leg raising positive on the right, but contralateral straight leg test negative; slump test positive on left; and no calf atrophy.[117] The results of his examinations by specialists were not received yet and Plaintiff was concerned that pain was minimally relieved with narcotics.[118] PA Andelin discussed that Plaintiff was not a good candidate for chronic narcotics because they only provide minimal relief and if increased further it would be unsafe levels.[119] On October 14, 2020, Plaintiff returned to discuss the results of his independent examinations.[120] PA Andelin noted that Plaintiff continued to have pain daily as well as difficulty sleeping, and that his pain was not well-controlled by narcotic medication.[121]  PA Andelin opined that the MRI results supported a conclusion that Plaintiff's radicular pain started after his recent injury.[122] He noted that in March

---

[116] AR 527.

[117] AR 529.

[118] AR 530.

[119] *Id.*

[120] AR 531.

[121] *Id.*

[122] AR 534.

2019, Plaintiff was status post laminectomy and MRI indicated a bulge and broad-based central disc protrusion as well as a lateral extrusion and that there was mild displacement of the right L5 nerve root posteriorly.[123]  The May 2020 MRI indicated moderate degenerative changes at L5, with moderate degenerative disc changes; disc extrusion which narrow the lateral recesses and possibly cause bilateral nerve root impingement; and moderate to prominent foraminal stenosis on the left side and right side due to disc bulge and ligamentous and facet hypertrophy.[124]

On November 30, 2020, Plaintiff presented to PA Andelin for follow up, reporting that his pain was the same but there was an increase in numbness and tingling in his feet and he had gained ten pounds due to inactivity.[125] He was requesting a refill of Percocet and had finished his Percocet early.[126] PA Andelin prescribed gabapentin and discussed tapering narcotics.[127]  On December 29, 2020, Plaintiff presented to PA Andelin for an evaluation for DSHS.[128] PA Andelin noted that Plaintiff had a chronic back pain following a surgery five years ago and had

---

[123] *Id.*

[124] *Id.*

[125] AR 543.

[126] *Id.*

[127] AR 546.

[128] AR 553.

not worked since earlier in the year when he sustained a back injury when lifting at work.[129]  Plaintiff reported pain radiating down both legs and numbness from sitting too long.[130] PA Andelin noted that Plaintiff was on narcotics and recently had cocaine in his urine which Plaintiff stated was a one-time use.[131] PA Andelin noted that Plaintiff had right shoulder surgery but presently had no pain in the joint.[132] On examination, Plaintiff was tender over the paraspinal lumbar area, reported severe pain in his right thigh with straight leg raising, and had normal knee strength and no deformity or atrophy.[133] PA Andelin advised to get surgery with state insurance rather than waiting for worker's compensation to pay, and advised that he was tapering narcotic medication and would terminate if illicit substances were found again.[134]

On December 29, 2020, Myrna Palasi, MD, reviewed Plaintiff's file and PA Andelin's report for DSHS and rendered an opinion regarding Plaintiff's functional capacity for 12 months.[135]  Dr. Palasi opined that based on PA Andelin's findings

---

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *Id.*

[133] AR 555.

[134] AR 556.

[135] AR 557.

1  Plaintiff had a moderate limitation in postural restrictions; fine or gross motor skill

2  restrictions; and the ability to perform activities within a schedule, maintain

3  attendance and be punctual.[136]  She opined that he would be able to lift ten pounds

4  maximum, frequently lift or carry small articles such as files or tools, and sit for

5  most of the day and walk or stand for brief periods.[137] She opined that Plaintiff was

6  unable to:  lift 20, 50 or 100 pounds maximum; frequently lift and carry 10, 25, or

7  50 pounds; stand for 6 hours; and sit for prolonged periods with occasional pushing

8  and pulling.[138]  She opined that the highest exertional level Plaintiff could perform

9  was sedentary.[139] Dr. Palasi diagnosed Plaintiff with spondylosis, bilateral stenosis

10  of lateral recess of lumbar spine; and degenerative disc disease.[140]

11        On January 8, 2021, Plaintiff was seen by PA Andelin and continued on his

12  narcotic medication.[141]

13        On January 14, 2021, Dr. Palasi reviewed Plaintiff's file.[142] She noted that a

14  treatment note from October 2020 indicated he had chronic back pain, limiting

---

[136] AR 558.

[137] *Id.*

[138] *Id.*

[139] *Id.*

[140] AR 559.

[141] AR 562.

[142] AR 610.

1    mobility, that narcotics improved his mobility; that he had a history of an L4-5

2    laminectomy; that an MRI in May 2020 indicated degenerative disc disease with

3    disc extrusion, and possible nerve root impingement.[143]  She also noted a treatment

4    note of December 2020 stated that he had back surgery 5 years ago and reports

5    debilitating pain radiating down thighs posteriorly and had positive straight leg

6    raising at 10 degrees.[144]  She opined that the severity of Plaintiff's position closely

7    approached SSA Listing 1.04A and that she recommended a less than sedentary

8    RFC and a severity rating of 5 for failed back syndrome.[145]  She opined that DAA

9    was unrelated to his condition and that the symptoms would persist for 12

10   months.[146] She opined the onset date was supported as of June 1, 2020.[147]

11        On March 15, 2021, Plaintiff presented to Dr. Campbell for a follow up.[148]

12   Muscle strength was normal, sensation was intact, deep tendon reflexes were 2/4,

13   and Plaintiff had an antalgic gait with limited range of motion in the lumbar

14   spine.[149]  Dr. Campbell opined that a year of conservative treatment had not

15   _____

16   [143] *Id.*

17   [144] *Id.*

18   [145] *Id.*

19   [146] *Id.*

20   [147] AR 611.

21   [148] AR 668.

22   [149] AR 671.

23

DISPOSITIVE ORDER - 26

improved Plaintiff's back pain and he recommended an L4-5 transforaminal interbody lumbar fusion with posterior instrumentation.[150]

On May 11, 2021, Dr. Campbell performed a transforaminal interbody lumbar fusion with posterior instrumentation L4-5.[151] Plaintiff's preoperative and postoperative diagnosis was radiculopathy, degenerative disc disease, and low back pain.[152] Dr. Campbell performed a transforaminal lumbar interbody fusion at L4-5, placement of a biomechanical device at L4-5, right facetectomy and bilateral lumbar laminectomy at L4-5, and posterior lumbar instrumentation at L4-5 using Globus pedicle screws.[153] Following the surgery, Plaintiff had 8/10 surgical pain but resolved radicular pain, and moved slowly and cautiously due to pain but had good balance.[154]

On May 26, 2021, Plaintiff presented to Mitchell Parrish, PA for postoperative follow-up.[155] Overall he was well with improvement in symptoms but residual numbness and sharp pain into his feet.[156] Reflexes and strength were

---

[150] AR 671-672.

[151] AR 707, 710.

[152] AR 717.

[153] AR 717.

[154] AR 724.

[155] AR 749.

[156] *Id.*

normal, range of motion was full, sensation was intact, and gait was antalgic.[157] Plaintiff was advised not to lift over 20 pounds and to avoid repetitive bending, stooping, or twisting.[158]

On June 7, 2021, Plaintiff presented to PA Andelin for follow-up and reported that he had been in a lot of pain since his surgery and not sleeping well despite narcotic pain medication.[159] Plaintiff reported that he continued to have pain radiating into his right leg but that it was less than before surgery.[160] On July 19, 2021, Plaintiff presented to PA Andelin for follow up.[161]  He reported that his radiating pain in his right leg resolved and that he has less back pain, but still felt pain in his left back and that bending increased it.[162]

On July 23, 2021, Plaintiff presented to Dr. Campbell for post-surgical follow up.[163] Plaintiff complained of continuing but improved back pain and requested

---

[157] AR 750.

[158] *Id.*

[159] AR 765.

[160] *Id.*

[161] AR 761.

[162] *Id.*

[163] AR 971.

physical therapy.[164] Dr. Campbell found that Plaintiff's preoperative conditions had changed and he lifted his restrictions and released him to return to full duty.[165]

Plaintiff presented for initial assessment for post-surgical physical therapy on August 11, 2021, with Joanne Thomas, PT.[166] On August 19, 2021, Plaintiff presented to Russell Reavely, PTA for physical therapy.[167] PT Reavely noted decreased range of motion, decreased strength, abnormal posture, abnormal balance, gait deviations of abnormal pelvic and sacral alignment.[168] On examination Plaintiff had shaking of the left leg with straight leg raising and reduced spinal flexion when standing.[169]

On August 21, 2021, Plaintiff presented to PA Andelin for follow up and reported that he was doing well.[170] His exam was benign.[171]

---

[164] *Id.*

[165] *Id.*

[166] AR 967.

[167] AR 963.

[168] AR 964.

[169] *Id.*

[170] AR 757.

[171] AR 759.

On September 2, 2021, Plaintiff presented to PT Thomas.[172] PT Thomas noted decreased range of motion, decreased strength, abnormal posture, abnormal balance, gait deviations of abnormal pelvic and sacral alignment.[173] PT Thomas noted that function was limited by pelvic dysfunction and mechanics of the lumbar fusion.[174] On September 14, 2021, Plaintiff presented to PT Reavely, PTA, and reported back pain.[175] PT Reavely noted decreased range of motion, decreased strength, abnormal posture, abnormal balance, gait deviations of abnormal pelvic and sacral alignment.[176] On November 11, 2021, Plaintiff completed his physical therapy plan.[177] At that time, he was capable of flexion to 93 degrees with pain in the right lumbar spine.[178] Plaintiff reported new symptoms of burning and stiffness, although he had been ready to transition to home exercise prior to this.[179]

---

[172] AR 960.

[173] *Id.*

[174] AR 961.

[175] AR 957.

[176] *Id.*

[177] AR 994.

[178] *Id.*

[179] AR 996.

On November 18, 2021, Plaintiff presented to Dr. Campbell and reported that he had completed his physical therapy visits but wanted to do more.[180] Dr. Campbell opined that Plaintiff's pre-operative low back pain had resolved and stated that he would not impose restrictions.[181] He refilled Plaintiff's physical therapy prescription and told him to return in six months.[182] An X-Ray taken the same day showed expected postoperative appearance of the spine status post diskectomy with interbody fusion at L4-L5; an anterior wedge deformity of T12, chronic posttraumatic change versus developmental finding; and mild disk space narrowing.[183]

On January 12, 2022, Plaintiff presented to PA Andelin asking for chronic pain medication.[184] He admitted to using someone else's urine for a sample and said it was because he had not taken his medication.[185] On examination, he had

---

[180] AR 1165.

[181] *Id.*

[182] *Id.*

[183] AR 1171.

[184] AR 1411.

[185] *Id.*

tenderness in his spine but no spasm.[186] PA Andelin referred Plaintiff to pain

management for consideration of injectable medication.[187]

On July 30, 2022, Plaintiff presented to  the emergency center of Samaritan

Healthcare Hospital with complaints of right elbow and biceps pain.[188] Plaintiff

reported that he was at work, reaching to put boxes on a shelf and felt a "pop" in

his shoulder.[189] An MRI without contrast indicated a complete tear of the distal

biceps tendon with approximately 1.5 cm of proximal retraction of the torn stump,

and regional soft tissue edema present.[190] On August 1, 2022, Plaintiff was

admitted to Samaritan Healthcare Hospital where surgical repair of a right distal

biceps tendon rupture was performed by orthopedic surgeon Leo Chough, MD.[191]

Dr. Chough noted that Plaintiff presented on July 30, 2022, to the emergency room

and was treated by Rich Eak, ARNP, who ordered an MRI which confirmed a

complete rupture of the distal biceps.[192] Plaintiff's pre-operative and post-operative

---

[186] AR 1413.

[187] AR 1414.

[188] AR 1668.

[189] AR 1669.

[190] AR 1670.

[191] AR 1659.

[192] *Id.*

diagnosis was right distal biceps tendon rupture.[193] Dr. Chough noted that the surgery went well with no complications and the plan was to have immediate range of motion of the hand, fingers, wrist and elbow; wound check should be done in 7-10 days; and Plaintiff should appear in 6 weeks for follow up with X-rays.[194]

On August 29, 2022, Plaintiff presented to Brandon Penix, DO, for follow up.[195] On examination, he had right arm myalgias, he had tenderness in the trapezius and rhomboid, decreased range of motion and tenderness in the elbow, and weakness in the right elbow secondary to pain.[196] Dr. Penix noted that Plaintiff should have been scheduled for physical therapy and that he would need to be placed into therapy immediately to get on the typical timeline.[197] On August 30, 2022, Plaintiff presented to Leo Chough, MD for follow up of an August 1, 2022 surgical repair of right distal biceps tendon.[198] Despite instructions to move his shoulder to its fullest range of motion, Plaintiff kept his arm in a sling and it was quite stiff.[199] On examination, the incision was fully healed and there was passive

---

[193] AR 1664.

[194] AR 1`665.

[195] AR 1655.

[196] AR 1655-1656.

[197] AR 1656.

[198] AR 1653.

[199] Id.

motion to 30 degrees but Plaintiff was hesitant for any movement.[200] On August 31, 2022, Plaintiff presented to Jacob Bruce, PT, for initial evaluation for physical therapy.[201] PT Bruce noted that Plaintiff had been referred for therapy after surgery on August 1, 2022, to repair a biceps tendon rupture.[202]

On September 19, 2022, Plaintiff presented to Dr. Penix for occupational therapy evaluation of his right arm following surgery on July 31, 2022.[203] On examination, he had right arm myalgias, he had tenderness in the trapezius and rhomboid, decreased range of motion and tenderness in the elbow, and weakness in the right elbow secondary to pain.[204]  Plaintiff was diagnosed with rupture of distal biceps tendon, and DeGuervain's tenosynovitis, right.[205] On September 20, 2022, Plaintiff presented to Leo Chough, MD, for follow up of a repair of the right distal biceps.[206] Dr. Chough noted that Plaintiff was immobile for the first month after surgery and was trying to gain range of motion with therapy.[207]  Plaintiff reported

---

[200] AR 1654.

[201] AR 1645.

[202] AR 1647.

[203] AR 1651.

[204] AR 1652.

[205] *Id.*

[206] AR 1650.

[207] *Id.*

improvement but continued numbness of the radial forearm toward the base of the thumb.[208] Dr. Chough opined that the numbness was transient and that Plaintiff was showing signs of improvement.[209]

On October 27, 2022, Plaintiff presented to Brett Degooyer, DO, for evaluation of a right arm injury that occurred on July 30, 2022, when he was reaching up to put boxes on a pallet.[210] Although released by surgeon he reported significant pain.[211]  On November 17, 2022, Plaintiff presented to PA Andelin for follow up for diabetes, hypertension, and hyperlipidemia.[212] PA Andelin noted that he was doing well and that his biceps tendon repair was healing well in PT.[213] PA Andelin assessed him with diabetes mellites, type 2; vision changes; long term use of oral hypoglycemic drugs; hypertension; and chronic kidney disease stage 2.[214]

On February 27, 2023, PA Andelin completed a form titled Medical Report.[215] He states that he first saw Plaintiff on January 27, 2019, and last saw

---

[208] *Id.*

[209] AR 1651.

[210] AR 1649.

[211] *Id.*

[212] AR 1680.

[213] *Id.*

[214] AR 1683.

[215] AR 1724-1726.

him on February 3, 2023, and that his diagnosis were radiculopathy, degenerative

disc disease lumbar, spondylosis, and positive straight leg raising.[216] He stated that

Plaintiff's symptoms were burning pain on the left side, tingling in the lower back

near buttocks, and muscle spasms.[217] He opined that Plaintiff would need to

elevate his legs for one third of the day due to back pain, and that Plaintiff's

treatment included two lumbar back surgeries, physical therapy, oxycodone,

hydrocodone, gabapentin, NSAIDS, and lidocaine.[218] PA Andelin opined that

Plaintiff had no side effects from medication and that in the past he had

drowsiness from gabapentin but did not take it anymore and that he had no

physical or mental condition reasonably likely to cause pain.[219] PA Andelin opined

that some work such as work requiring bending frequently would cause Plaintiff's

condition to deteriorate but that a job such as driving a forklift would not.[220]  PA

Andelin opined that Plaintiff would miss four or more days of work per month

because pain limits his mobility.[221] He opined that Plaintiff could perform light

work and that he could only occasionally reach, handle, and finger, but added a

---

[216] AR 1724.

[217] *Id.*

[218] *Id.*

[219] *Id.*

[220] *Id.*

[221] AR 1725.

narrative statement that Plaintiff is unable to abduct his thumb or flex his

elbow.[222] PA Andelin opined that Plaintiff would be likely to be off task over thirty

percent of the time and that these limitations were in place since May 2020.[223]

     5.   <u>Analysis</u>

     Initially, the Court notes that in her credibility analysis the ALJ

acknowledged that there was a significant improvement in Plaintiff's condition

after his fusion surgery but failed to consider that a separate period of disability

existed. The Court will address the reasons given by the ALJ to find Plaintiff's

subjective complaints less than credible.

     *a.*    <u>*The ALJ's reasoning that Plaintiff's allegations are inconsistent*</u>

             <u>*with the medical record.*</u>

The ALJ provided the following reasoning:

The claimant has considerable normal objective findings despite his
allegations of debilitating pain and other symptoms. Although the
record shows evidence of abnormal gait, the claimant's gait has often
been without normal, and when his gait was disturbed, he was often
able to perform other station testing such as tandem and heel-toe
walking (Exhibits 3F, pp. 2, 5; 6F, p. 12; 11F, p. 135; 14F, p. 120
(normal); Exhibit 6F, p. 8; 7F, p. 11, 16, 20; 9F, p. 13; 12F, p. 16 (antalgic
but with normal station testing); but see Exhibit 3F, p. 13; 4F, p. 47;
10F, p. 5; 11F, p. 57, 111; 14F, p. 76; (abnormal gait). The claimant has
generally had normal reflex and sensation testing, despite complaints
of numbness (Exhibits 3F, p. 3; 6F, p. 7; 7F, pp. 11, 16; 9F, p. 22; 10F,
p. 5; 11F, p. 116, 127; 14F, p. 120; 15F, p. 38; 17F, p. 26; 18F, p. 10; but
see Exhibit 6F, p. 12; 15F, p. 215; 16F, p. 143). Despite limited range of
motion in the lumbar spine, the claimant has exhibited adequate to

---

[222] *Id.*

[223] AR 1726.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

normal strength, except immediately following lumbar surgery (Exhibits 2F, p. 4; 3F, p. 6; 3F, p. 18; 4F, p. 15; 6F, pp. 11-12; 11F, pp. 127, 135; 12F; 14F, p. 29; 15F, p. 50; 16F, p. 150; but see Exhibit 16F, p. 117).[224]

While the ALJ has correctly cited to some instances in which Plaintiff has been noted to have normal reflexes, sensation, and strength, the ALJ ignored the most compelling evidence of record – MRI and imaging tests which indicated degenerative changes at L5, with moderate degenerative disc changes; disc extrusion which narrow the lateral recesses and cause bilateral nerve root impingement; and moderate to prominent foraminal stenosis on the left side and right side due to disc bulge and ligamentous and facet hypertrophy.[225]  The ALJ additionally ignored that on multiple occasions from multiple sources, Plaintiff had positive straight leg raising, which is indicative of a nerve root impingement.[226] She ignored evidence of weakness in Plaintiff's left leg, as well.[227]

While the ALJ did not misstate Plaintiff's record, in many of the treatment notes that the ALJ cited to as indicating normal reflex and sensation, the treatment notes also indicated that Plaintiff had abnormal gait, positive straight

---

[224] AR 23.

[225] AR 534.

[226] AR 449, 470, 529, 555, 610, 861, 872, 964, 1724.

[227] AR 642.

leg raising, and spasm on palpation.[228]  The treatment notes cited to by the ALJ either contain some benign findings which she referenced and contain other findings indicating more severe symptomology or were notes from sources who examined Plaintiff post-fusion.  As such, the records cited take the findings out of context. Context is crucial as "treatment records must be viewed in light of the overall diagnostic record."[229] An ALJ may not cherry pick evidence to support a conclusion while ignoring other competent evidence in the record.[230] The ALJ did so in this matter.

b.    *The ALJ's reasoning that Plaintiff's condition improved with treatment.*

---

[228] AR 644 (indicating positive straight leg raising); AR 891 (indicating moderately severe muscle spasm and antalgic gait); AR 1106 (indicating neural tension and dorsal foot hypoesthesia/paresthesia); AR 666, 671 (antalgic gait and limited range of motion in lumbar spine); AR 724 (steady gait immediately after fusion surgery); AR 750 (antalgic gait post-fusion, ambulating with use of a cane).

[229] *Ghanim v Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014).

[230] *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (cleaned up) ("Although it is within the power of the Secretary to make findings concerning the credibility of a witness …, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

1    The ALJ reasoned as follows:

2    The claimant's symptoms have improved with therapeutic exercises
     (Exhibits 3F, pp. 10, 15; 17F, p. 6). His physical therapist indicated he
3    was doing well and expected future progress and good outcomes
     (Exhibit 12F, p. 6). Pain medications were effective in controlling pain
4    and increasing mobility (Exhibits 4F, pp. 41, 53; 11F, p. 60). The
     claimant recovered well from lumbar surgery, which improved his
5    symptoms significantly, including eliminating radicular pain (Exhibit
     12F, p. 19; 15F, pp. 5, 14, 46). The claimant's bladder symptoms have
6    improved with drinking more water and using bladder medications
     (Exhibits 4F, p. 61; 16F, p. 64). His improvement was such that James
7    Campbell, D.O., concluded he was able to return to work without
     restrictions within three months of lumbar surgery (Exhibit 12F, p. 19).
8    These improvements in functionality and symptoms are consistent with
     the non-debilitating functional capacity assigned.[231]

9        The ALJ's articulated reasoning supports the Court's conclusion that she

10   failed to consider that a separate period of disability existed between the alleged

11   onset date and a date post-fusion surgery.  The ALJ acknowledges in her reasoning

12   that there was a significant improvement in Plaintiff's condition after fusion

13   surgery alleviated his radicular pain but did not consider that a period of sixteen

14   months existed between the alleged onset date and the time that Dr. Campbell

15   released Plaintiff to return to work post-surgery.  Moreover, there was a fifteen-

16   month period between the time that objective MRI imaging documented that

17   Plaintiff suffered a nerve root impingement and the time that Dr. Campbell opined

18   Plaintiff could return to work.

19

20

21

22   _____

     [231] AR 23.
23

1    Additionally, the ALJ failed to consider that the medication which relieved

2    Plaintiff's pain was in the form of powerful narcotics, that Plaintiff's treating

3    sources indicated were not able to be used in the long-term.[232]

4    The ALJ failed to address the specific period prior to Dr. Campbell's

5    authorization for Plaintiff to return to work post-fusion surgery. The Court

6    concludes that this warrants remand.

7            c.    *The ALJ's reasoning that Plaintiff was noncompliant with*

8                *treatment*

9    A claimant's course of treatment, including an inadequately explained

10    failure to seek treatment, is a relevant factor for the ALJ to consider when

11    assessing the claimant's symptom reports.[233] Here, the ALJ articulated the

12    following reasons to find Plaintiff noncompliant with treatment:

13        The record shows considerable instances of noncompliance with
14        treatment recommendations. The claimant unilaterally ceased bladder
    medications because his symptoms were better, resulting in increased
15        symptoms (Exhibit 16F, p. 64). The claimant has admitted to
    medication overuse (Exhibit 16F, p. 74). Additionally, although he
16        testified he did not feel comfortable completing at-home physical
    therapy exercises, this is precisely the directive he was given by
17        treatment providers (Exhibit 3F, pp. 11, 15). The claimant violated his
    pain contract by using cocaine, resulting in no pain medication for some
18        time (Exhibit 1FF, p. 44; Hearing Testimony).[234]

19

20    [232] AR 546.

21    [233] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

22    [234] AR 23.

23

1    Initially, the Court finds the ALJ's reasoning that Plaintiff discontinued

2  bladder medication to be error.  The Court notes that Plaintiff's claim for disability

3  is based on the impairments caused by degenerative disc disease and Plaintiff has

4  not alleged bladder or kidney disease as a basis for disability.  Assuming that the

5  ALJ was correct, and Plaintiff did discontinue his bladder medication without

6  cause, it had no effect on his nerve root impingement.  An ALJ must consider the

7  basis for the limitations and not discount because of nonrelevant normal

8  findings.[235]

9    The ALJ also erred in finding that Plaintiff violated his pain contract by his

10  self-reported one-time use of cocaine.  While the ALJ accurately stated that

11  Plaintiff was not allowed pain medication for several weeks, she has failed to

12  articulate any manner in which his inability to obtain narcotics for that time period

13  resulted in greater inability to engage in substantial gainful activity, or any

14  manner in which his nerve root impingement, which required surgical

15  intervention, would have improved.

16    d.    _The ALJ's reasoning that Plaintiff's testimony was inconsistent_

17        _with his daily activities_

18    The ALJ found that Plaintiff's activities are inconsistent with his allegations

19  because at the time of surgery he reported that he was fully independent with meal

---

[235] _See Ghanim v. Colvin_, 763 F.3d 1154, 1164 (9th Cir. 2014).

preparation, self-care, household chores, laundry, and transportation.[236] In doing so, the ALJ has taken the cited treatment note out of context.

The treatment record cited by the ALJ is one in which Plaintiff reported that prior to his injury, he was a laborer at BMW and enjoyed basketball.[237] The note continued that his "prior level of function" was that he was independent with self-care, meal preparation, household chores, and laundry and was an active driver.[238] The treatment note, taken in context with the accompanying language, reflects that the daily activities described did not indicate a present ability to perform those functions but indicated that he was able to do so before his injury.

For this reason, the Court concludes that the ALJ did not properly consider Plaintiff's daily activities when assessing the credibility of his subjective testimony.

_____

[236] AR 24.

[237] AR 1208.

[238] AR 1208-1209.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

      6.    <u>Summary</u>

Because the ALJ did not give good reasons for discounting Plaintiff's symptom reports, a remand is warranted. On remand, the ALJ is directed to consider the consistency of Plaintiff's symptoms reports with the record as a whole, and to consider both the period prior to his fusion surgery and the period following his fusion surgery.

**B.    Medical Opinions: This issue is moot.**

Plaintiff argues the ALJ failed to properly assess the opinions of PA Andelin and Dr. Palasi as to both supportability and consistency. As discussed above, the ALJ failed to consider Plaintiff's limitations both prior to and after the fusion surgery. Accordingly, the ALJ failed to consider that Dr. Palasi's opinion was rendered during the time period prior to the fusion surgery and was supported by the record during that time period. Because the Court has remanded the case for consideration of the record as a whole, the ALJ will be required to reevaluate the medical opinions. At that time, the ALJ will be required to address the inconsistencies in PA Andelin's statements wherein he states that Plaintiff has pain limiting his function and also states that he has no pain which would limit his function. Because those issues will be addressed on remand, the Court finds this issue to be moot.

**C.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award

benefits, is within the discretion of the court."[239] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[240]

Although this record supports a disability award from about April 2020 to May 2021, remand is necessary to allow the ALJ to determine the specific dates that Plaintiff's lumbar spine symptoms, considering both his low back and radicular symptoms, prevented him from engaging in fulltime work. After doing so, the ALJ should then consider the subsequent period as a separate relevant period, and if necessary, the ALJ is to develop the medical record and order a physical consultative examination as to Plaintiff's torn biceps tendon and other impairments.  It is not clear what, if any, additional limitations are to be added to the RFC.  Therefore, the ALJ should obtain testimony from a medical expert pertaining to Plaintiff's impairments, and then consider any additional evidence presented, and make findings at each of the five steps of the sequential evaluation process.

---

[239] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[240] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

1

### IV.    Conclusion

2      Accordingly, **IT IS HEREBY ORDERED**:

3      1.      The ALJ's nondisability decision is **REVERSED**, and this matter is

4              **REMANDED** to the Commissioner of Social Security for further

5              proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

6      2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and**

7              **14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

8      IT IS SO ORDERED. The Clerk's Office is directed to file this order and

9  provide copies to all counsel.

10      DATED this 8th day of May, 2024.

11

12      _____
               EDWARD F. SHEA
        Senior United States District Judge

13

14

15

16

17

18

19

20

21

22

23